David **WATKINS**, Appellant,

v.

Jerry **WILLIAMSON**, Diane Williamson, First American Title Resources, and Republic Title of Texas, Inc. F/K/A Title Resources Corp., Appellees.

No. 05–92–02382–CV.

Court of Appeals of Texas, Dallas.

Aug. 26, 1993.

Alan Mask, Dallas, for appellant.

E. Eldridge Goins, Jr., David L. Paschall, Dallas, for appellees.

Before LAGARDE, OVARD and BARBER, JJ.

## OPINION

OVARD, Justice.

David Watkins appeals the summary judgment granted in favor of appellees Jerry and Diane Williamson, First American Title Resources, and Republic Title of Texas, Inc. In three points of error, Watkins asserts that the trial court erred in granting (1) appellees' motion for summary judgment, (2) attorneys' fees to appellees, and (3) summary judgment in favor of First American Title Resources concerning its fiduciary duty. In a single cross-point, appellees contend that the trial court erred in refusing to award the amount of attorneys' fees they requested. We overrule all points and affirm the trial court's judgment.

## FACTS

Watkins and the Williamsons signed a residential earnest money contract for the purchase of Watkins's home, and the Williamsons deposited $10,000 earnest money with First American Title Resources as escrow agent. The parties agreed on a purchase price of $850,000 and further agreed that the "contract is contingent upon Buyer obtaining satisfactory financing."

The Williamsons conducted negotiations with three potential lenders and expended about $1,000 on appraisals but had not obtained financing near the time the contract would terminate without financing. The Williamsons explained their position to Watkins, and the parties agreed to extend the termination date of the contract. The Williamsons also agreed to allow Watkins to place the property back on the market.

The Williamsons were unable to obtain financing satisfactory to them, and after the agreed extension, the contract terminated. At this point, the Williamsons attempted to have their earnest money returned. They sent a termination agreement to Watkins, but Watkins did not return it. The Williamsons then executed an affidavit and indemnity agreement in favor of the escrow agent to get their money refunded. First American released the earnest money. Watkins later made demand for the money to First American and the Williamsons claiming they had breached the contract.

## SUMMARY JUDGMENT

In his first point of error, Watkins argues that the trial court erred in granting appellees' motion for summary judgment. Summary judgment may be rendered only if the pleadings, depositions, admissions, and affidavits show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. TEX.R.CIV.P. 166a(c); *Rodriguez v. Naylor Indus., Inc.,* 763 S.W.2d 411, 413

(Tex.1989). This Court reviews a summary judgment using the following standards:

1. The movant for summary judgment has the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law.

2. In deciding whether there is a disputed material fact issue precluding summary judgment, evidence favorable to the non-movant will be taken as true.

3. Every reasonable inference must be indulged in favor of the non-movant and any doubts resolved in its favor.

*Nixon v. Mr. Property Management Co.,* 690 S.W.2d 546, 548–49 (Tex.1985).

■ The issue in this case concerns what standard we should apply to the satisfactory financing provision in the contract. After determining the appropriate standard, we must review the appellees' summary judgment proof and decide whether it met that standard. Watkins argues that the appropriate standard is an objective, good faith standard. He relies on cases in which the performance of the contract must be to the satisfaction of one of the parties, such as construction contracts. *See Black Lake Pipe Line Co. v. Union Constr. Co.,* 538 S.W.2d 80, 88–89 (Tex.1976); *Cranetex, Inc. v. Precision Crane & Rigging of Houston, Inc.,* 760 S.W.2d 298, 301–02 (Tex.App.—Texarkana 1988, writ denied). Watkins's reliance on these cases is misplaced because they deal with contracts containing covenants to perform. In those contracts, one party completes performance such as building or repairing something, and that performance is conditioned on the other party's satisfaction with the performance. Policy dictates that an objective, good faith standard must be used to evaluate the satisfaction in those situations; otherwise, the party who had not performed could arbitrarily say that the performance was unacceptable. Such a result would inflict a substantial loss on the party who had completed performance. *See Black Lake Pipe Line Co.,* 538 S.W.2d at 89.

This contract, however, contains a condition precedent concerning satisfactory financing. Rather than one party performing and the other then voiding the contract as with covenants to perform, with a condition prece-

dent, the contract depends upon the condition being met. *See Hohenberg Bros. Co. v. Gibbons and Co.,* 537 S.W.2d 1, 3 (Tex.1976); *R.C. Small & Assoc., Inc. v. Southern Mechanical, Inc.,* 730 S.W.2d 100, 104 (Tex. App.—Dallas 1987, no writ). Because neither party has performed, the risks are not as great as those with contracts containing covenants where often one party has completed performance.

Appellees argue that this Court should apply a subjective standard. *See Knox v. Townes,* 470 S.W.2d 290 (Tex.Civ.App.—Waco 1971, no writ). The purchase contract in *Knox* also contained a provision making the contract contingent upon the buyer obtaining satisfactory financing. The buyer in *Knox* wanted a loan for a specific amount over twenty-five years at nine percent interest. The court held that when two parties agree that a contract shall not become binding unless some specified contingency is met, no obligation arises until the contingency occurs. *Knox,* 470 S.W.2d at 292. The court affirmed the summary judgment in favor of the purchaser in *Knox,* reasoning that unless the purchaser obtained financing satisfactory to him, he was under no obligation to perform under the contract. *Knox,* 470 S.W.2d at 292. We agree with *Knox* and apply a subjective standard.

■ The Williamsons conducted negotiations with several institutions and expended more than $1,000 on appraisals on the property. Satisfactory financing to the Williamsons was a ninety percent loan for a thirty year term with a maximum down payment of ten percent. Further, the Williamsons did not want to pay more than two points and wanted no additional collateral to be required. In his deposition, Williamson stated "I wanted to borrow more money on the Caruth property than was available. I wanted to pay less points than was available, and I thought the interest rate was more than I wanted to pay."

Watkins presented no summary judgment evidence that the financing terms the Williamsons sought were unreasonable or in bad faith. Watkins's affidavit shows that several options were being pursued; however, no

evidence indicates that the Williamsons would be satisfied with the various options. Also, Watkins's affidavit contains a statement purportedly made by the Williamsons' financial advisor that the Williamsons "might or might not want to really buy the house." This evidence is not sufficient to create a fact issue concerning the availability of satisfactory financing. We conclude that the Williamsons did not obtain financing satisfactory to them. *See Knox*, 470 S.W.2d at 292.

Watkins argues in the alternative that this Court has previously declined to espouse a purely subjective standard. *Cotten v. Deasey*, 766 S.W.2d 874 (Tex.App.—Dallas 1989, writ denied). In *Cotten*, the seller of the property had a contract with a real estate agent to market the property. During the pendency of that contract, the seller entered into a purchase agreement with a buyer without the agent's knowledge. When the seller closed on the house the day after the agency expired, the agent sued.

This Court did not accept the seller's argument in *Cotten* that the purchase contract was unenforceable because it contained a satisfactory financing provision. Rather, this Court concluded that contracts such as the purchase agreement in the case

> require the exercise of honest judgment by the purchaser. Therefore, we hold that a contract of sale conditioned on the purchaser's determination that financing was available to him in an amount and on terms satisfactory to the purchaser in his sole judgment does not render the contract nonbinding and unenforceable.

*Cotten*, 766 S.W.2d at 878. The reasoning in *Cotten* upholds the idea that a contract can call for a satisfactory financing provision that calls for the subjective satisfaction of the purchaser. The facts in this case do not indicate that the Williamsons did not exercise "honest judgment." They wanted certain terms in the financing that they were unable to secure in spite of working with various institutions. Watkins argues that various proposals could have been available and that the Williamsons may not have wanted to buy the house. He has not shown how the terms articulated by the Williamsons were not made in the exercise of honest judgment.

We conclude that the Williamsons did not obtain financing satisfactory to them and that the summary judgment was appropriate. We overrule Watkins's first point of error.

## ATTORNEYS' FEES

In his second point of error, Watkins argues that the trial court erred in granting attorneys' fees to appellees on their counterclaim under the declaratory judgment act. At the outset we note that the award of attorneys' fees lies within the sound discretion of the trial court and will not be disturbed on appeal unless there is an abuse of discretion. *Pontiac v. Elliott*, 775 S.W.2d 395, 401 (Tex.App.—Houston [1st Dist.] 1989, writ denied).

Paragraph 17 of the contract dealing with attorneys' fees states:

> Any signatory to this contract, Broker or Escrow Agent who is the prevailing party in any legal proceeding brought under or with relation to this contract or transaction shall be additionally entitled to recover court costs and reasonable attorney fees from the non-prevailing party.

Both Jerry and Diane Williamson are signatories to the contract so they are entitled to attorneys' fees under the terms of the contract. *See Reilly v. Rangers Management, Inc.*, 727 S.W.2d 527, 529 (Tex.1987); *C & C Partners v. Sun Exploration & Prod. Co.*, 783 S.W.2d 707, 714 (Tex.App.—Dallas 1989, writ denied). First American was the escrow agent involved in the contract and is thereby entitled to fees. *Reilly*, 727 S.W.2d at 529; *C & C Partners*, 783 S.W.2d at 714.

Watkins contends that Republic Title should not have received attorneys' fees. Republic Title filed a counterclaim under the declaratory judgment act requesting the Court to declare that it was not a party to the contract and that it had no liability to Watkins under the contract. Although Republic Title was not involved in the contract in any way, the company was named in the suit, apparently in error. The clear wording of the contract states that an escrow agent who prevails "in any legal proceeding brought under or with relation to this contract" can recover fees. Republic Title was not the actual escrow agent used in the con-

tract, but the company did prevail in a legal proceeding under the terms of the contract.

We construe the intention of the parties by reference to the words used in the contract. *Preston Ridge Fin. Servs. v. Tyler,* 796 S.W.2d 772, 775 (Tex.App.—Dallas 1990, writ denied). The contract specifically provides that any broker or escrow agent who prevails in any litigation concerning the contract shall be entitled to reasonable attorneys' fees. Because Republic was a prevailing escrow agent, it was entitled to fees under the contract. The judgment does not specify under what theory the court awarded the attorneys' fees. Because we conclude that the award of attorneys' fees was appropriate under the contract, we do not reach the merits of Watkins's contentions concerning the declaratory judgment act.

## FIDUCIARY DUTY

■ In his third point of error, Watkins contends that the trial court erred in granting summary judgment in favor of First American because fact issues existed concerning a possible breach of First American's fiduciary duty as escrow agent. An escrow agent owes a fiduciary duty to both parties, seller and buyer, to the underlying contract. *Trevino v. Brookhill Capital Resources,* 782 S.W.2d 279, 281 (Tex.App.—Houston [1st Dist.] 1989, writ denied); *Capital Title Co. v. Donaldson,* 739 S.W.2d 384, 389 (Tex.App.— Houston [1st Dist.] 1987, no writ). The three elements of this fiduciary duty are 1) a duty of loyalty; 2) a duty to make full disclosure; and 3) a duty to exercise a high degree of care to conserve the money and pay it only to those persons entitled to receive it. *City of Fort Worth v. Pippen,* 439 S.W.2d 660, 665 (Tex.1969).

■ First American was designated as "Escrow Agent" in the contract and therefore owed a fiduciary duty to both Watkins and the Williamsons. The agreement called for an earnest money payment to be held by First American as a disinterested escrow agent and carried the same fiduciary duties. *See Cowman v. Allen Monuments, Inc.,* 500 S.W.2d 223, 225–26 (Tex.Civ.App.—Texarkana 1973, no writ). Even when the underlying agreement involves an earnest money

deposit and is not a true escrow contract, the neutral escrow agent with whom funds are placed still owes a fiduciary duty to the parties. *See Trevino,* 782 S.W.2d at 281.

■ Pursuant to this fiduciary duty, First American was bound to follow the agreed terms of the contract. Paragraph 4 of the contract concludes by stating that if the requisite financing for the home is not secured within 40 days after the contract's effective date, then "this contract shall terminate and the Earnest Money shall be refunded to buyer." First American had an absolute duty to carry out the terms of the agreement creating the escrow agency. *See Albright v. Lay,* 474 S.W.2d 287, 291 (Tex.Civ.App.—Corpus Christi 1971, no writ). As we held in point one, the Williamsons did not obtain the required financing. Thus, First American fulfilled its obligation and did not breach its fiduciary duty when it returned the $10,000 earnest money to the Williamsons.

Finally, Watkins asserts that he took no action because he did not know of First American's intent to return the earnest money to the Williamsons and that he had no reason to believe the money would be paid without his consent. This argument is without merit. As already noted, Watkins signed the contract which provided for the return of the earnest money to the prospective purchasers if the requisite financing was not obtained. In addition, the termination agreement forwarded to Watkins by the Williamsons similarly provided for the refund of the earnest money to the Williamsons. Watkins did receive ample notice of both the potential return of the earnest money and the seeking of such refund by the Williamsons. We overrule Watkins's third point of error.

## APPELLEES' CROSS–POINT FOR ATTORNEYS' FEES

In a cross-point, appellees contend that the trial court erred in awarding them $6,750 in attorneys' fees. First, we note that appellees have cited no authority for their cross-point and therefore have waived any error. *See* Tex.R.App.P. 74(f). Second, even if we analyze the merits, we conclude that the trial court did not err in its award of attorneys' fees. Twenty-one days before the summary judgment hearing, the defendants had an affidavit on file as part of their summary

judgment proof supporting an award of $6,750 in attorneys' fees. After the hearing, appellees filed a supplemental affidavit supporting an award of $12,461.48 in attorneys' fees. They argue that they were entitled to $12,461.48 in fees.

 Rule 166a requires that a party moving for summary judgment must file its evidence at least twenty-one days before the hearing. *See* TEX.R.CIV.P. 166a(c). Because appellees' supplemental affidavit was filed after the hearing, it was not timely. For a late affidavit to be considered part of the summary judgment evidence, the record must contain an affirmative indication that the trial court permitted the late filing of the affidavit. *Vasquez v. Carmel Shopping Ctr. Co.*, 777 S.W.2d 532, 535 (Tex.App.—Corpus Christi 1989, writ denied). No leave to file a late supplemental affidavit was sought or obtained by appellees, nor does the record affirmatively show that the trial court permitted late filing of the affidavit. The only summary judgment evidence concerning attorneys' fees that the trial court could properly consider was the affidavit for $6,750. Thus, the trial court did not err in its award of $6,750 in attorneys' fees.

We overrule appellees' cross-point and affirm the judgment.