**Reversed and Remanded and Opinion Filed November 15, 2022**



In The
# Court of Appeals
## Fifth District of Texas at Dallas

### No. 05-22-00066-CV

**MATTHEW D. AUSTIN, CLASSIC PLUMBING, LLC AND JULIA M. MYERS, Appellants**
**V.**
**BILL AMUNDSON AND AMUNDSON PLUMBING, LLC, Appellees**

**On Appeal from the 101st Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. DC-21-06546**

## MEMORANDUM OPINION

Before Justices Schenck, Molberg,[1] and Nowell
Opinion by Justice Nowell

Appellees Bill Amundson and Amundson Plumbing, LLC (collectively

referred to as Amundson) filed suit against appellants Matthew D. Austin, Classic

Plumbing, LLC, and Julia M. Myers for defamation, defamation per se, statutory

libel, and business disparagement. Appellants filed a TCPA motion to dismiss,

which was overruled by operation of law. In two issues, appellants argue the trial

---

[1] The Honorable Leslie Osborne participated in the submission of this case; however, she did not participate in issuance of this memorandum opinion due to her resignation on October 24, 2022. The Honorable Ken Molberg has substituted for Justice Osborne in this cause. Justice Molberg has reviewed the briefs and the record before the Court.

court erred by denying their motion to dismiss and abused its discretion by allowing limited discovery. Because appellees failed to provide clear and specific evidence of a prima facie case for each element of their causes of action, we reverse and render judgment dismissing appellees' defamation, defamation per se, statutory libel, and business disparagement claims. We remand the case to the trial court for the determination of mandatory attorney's fees and for consideration of sanctions, if any. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 27.009(a)(1), (2).[2]

## Background

Amundson, a licensed Responsible Master Plumber, is a former employee of Classic.[3] Amundson left Classic in January 2017 and started his own plumbing company, Amundson Plumbing, LLC.

Amundson hired Matthew Austin as a Journeyman Plumber on or about January 1, 2020. Shortly thereafter, Amundson suspected Austin was working off the books and engaging in other activities that could affect Amundson's Responsible Master Plumber's license. Amundson terminated Austin for unauthorized use of company equipment, falsified time records, and impermissible use of Amundson Plumbing's credentials to acquire supplies for unauthorized jobs. Classic subsequently hired Austin. On November 20, 2020, Amundson filed a complaint

---

[2] We express no opinion on whether sanctions are appropriate on remand.

[3] Becoming a Master Plumber requires extensive training and passing a licensing and certification exam, which takes seven to ten years.

with the Texas Board of Plumbing Examiners (the Board) regarding Austin's unauthorized use of company time, forms, and equipment.

On or about December 9, 2020, Austin, while driving a Classic company truck, alleged Amundson chased him at a high rate of speed while driving an Amundson Plumbing truck. During the incident, Amundson attempted to cut off Austin and nearly caused another vehicle to crash. Austin told Julia Myers, Classic's CFO/HR manager, and she discussed the alleged incident with Austin and two others involved. She filed a police report with the Plano Police Department two days later. The "road rage" incident was subsequently closed with no further action.

On or about December 23, 2020, Austin filed his response to the Board addressing Amundson's complaints. Austin provided documentation indicating Amundson's allegations were untrue and suggested Amundson's behavior stemmed from retaliation for Austin's decision to work for a competitor. Austin also detailed the December 11, 2020, "road rage" incident.[4] The Board ultimately found no violations by Austin.

Amundson claimed, however, that the "sheer act of making defamatory statements places the information in the Board's files" and potentially hurts his plumbing reputation and business. On May 24, 2021, Amundson filed suit against appellants alleging defamation, defamation per se, statutory libel, and business

---

[4] In his report to the Board, Austin said the incident occurred on December 11, 2020; however, he later testified during his deposition the incident happened on December 9, 2020. Myers also testified during her deposition she talked to the men involved in the incident on December 9, 2020.

–3–

disparagement. He asserted Austin falsely accused him of road rage in statements to the Board, and Classic, through Myers, filed a false police report with the Plano Police Department.

Appellants filed a TCPA motion to dismiss arguing Amundson filed the lawsuit in retaliation against Austin, Classic, and Myers for exercising their right of free speech and their right of association in communicating their concerns regarding Amundson's reckless driving. Amundson filed a response and a motion for limited discovery. The trial court granted Amundson's limited discovery requests. In accordance with the trial court's order, appellants produced documents and appeared for depositions. Subsequently, Amundson filed an amended response to the motion to dismiss.

The trial court held a hearing on November 30, 2021. The trial court did not rule by the statutory deadline; therefore, appellants' dismissal motion was overruled by operation of law. This appeal followed.

## TCPA Framework and Standard of Review

Chapter 27 of the Texas Civil Practice and Remedies Code is a legislative enactment to curb "strategic lawsuits against public participation." *Thomas v. Wm. Charles Bundren & Assocs. Law Grp. PLLC*, No. 05-20-00632-CV, 2021 WL 3159795, at *3 (Tex. App.—Dallas July 26, 2021, no pet.) (mem. op.). The primary feature of the TCPA is a burden-shifting dismissal framework that allows defendants at an early stage to seek dismissal of a meritless suit in response to a defendant's

–4–

exercise of a protected right. *Id.* The moving party bears the initial burden of demonstrating "that the legal action is based on or is in response to the party's exercise of the right of free speech, the right to petition, or the right of association." TEX. CIV. PRAC. & REM. CODE ANN. § 27.005(b). If the movant carries the initial burden, the nonmovant seeking to avoid dismissal must establish "by clear and specific evidence a prima facie case for each essential element of the claim in question." TEX. CIV. PRAC. & REM. CODE ANN. § 27.005(c).

We review de novo the trial court's ruling on a TCPA motion, including the trial court's determinations as to whether the parties met or failed to meet their respective burdens under section 27.005. *See Dallas Morning News, Inc. v. Hall*, 579 S.W.3d 370, 377 (Tex. 2019); *Thomas*, 2021 WL 3159795, at *3. In conducting our review, we consider the pleadings, evidence a court could consider under Texas Rule of Civil Procedure 166a, and supporting and opposing affidavits stating the facts on which the liability or defense is based. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 27.006(a). With this framework in mind, we consider appellants' motion to dismiss.

### Exercise of the Right of Free Speech (Step One)

For a movant to trigger the TCPA's dismissal framework, there must first be a "communication" as defined by section 27.001(1). *Id.* § 27.001(1). Neither party challenges whether the statements at issue are "communications." Because the lawsuit involves claims predicated on more than one communication (appellants

–5–

refer to them as "categories"), we must consider each in determining whether appellants satisfied their burden that the communications were made while exercising their right of free speech. *See Thomas*, 2021 WL 3159795, at *5. The relevant categories are as follows:

1. Myers' statements to the Plano Police Department accusing Amundson of driving recklessly around Classic employees;

2. Austin's statements to the Board describing the reckless driving incident; and

3. Austin and Classic's "derogatory statements" to unidentified Amundson customers.

The "exercise of the right of free speech" means "a communication made in connection with a matter of public concern." *See* TEX. CIV. PRAC. & REM. CODE ANN. § 27.001(3). A "matter of public concern" is defined, in relevant part, as "a statement or activity regarding . . . a subject of concern to the public." *Id.* § 27.001(7)(C).

TCPA case law is clear that criminal acts are matters of public concern. *See, e.g.*, *Page v. Bakewell*, No. 05-21-00905-CV, 2022 WL 4007879, at *4 (Tex. App.— Dallas Sept. 2, 2022, no pet.) (mem. op.) (allegations person engaged in and admitted to engaging in criminal activity were communications made in connection with a matter of public concern); *Beard v. McGregor Bancshares, Inc.*, No. 05-21-00478- CV, 2022 WL 1076176, at *6 (Tex. App.—Dallas Apr. 11, 2022, pet. denied) (mem. op.) (Facebook post accusing person of killing animals was matter of public

concern); *CBS Stations Grp. of Tex., LLC v. Burns*, No. 05-21-00042-CV, 2021 WL 4398031, at *3 (Tex. App.—Dallas Sept. 27, 2021, no pet.) (mem. op.) (news broadcast involving robbery, high-speed chase, and arrest of suspect were matters of public concern). Speeding and reckless driving can constitute acts clearly dangerous to human life. *See Matter of R.C.*, 626 S.W.3d 76, 87 (Tex. App.—Houston [14th Dist.] 2021, no pet.); TEX. TRANSP. CODE ANN. §545.401(b). Such behavior, and particularly accusations of "road rage," are communications "made in connection with a matter of public concern." TEX. CIV. PRAC. & REM. CODE ANN. § 27.001(3). Moreover, reporting a crime to law enforcement is a matter of public concern. *See Keel Recovery, Inc. v. Tri Cty. Adjusters, Inc.*, No. 05-19-00686-CV, 2020 WL 5269603, at *4 (Tex. App.—Dallas Sept. 4, 2020, no pet.).

Amundson's causes of action, in part, rely on Myers' statements to the Plano Police Department, Austin's statements to the Board accusing Amundson of reckless driving, and appellants' "derogatory" statements regarding the incident to Amundson's clients. These communications were made in connection with a matter of public concern. Therefore, appellants met their initial burden of showing by a preponderance of the evidence that Amundson's lawsuit is based on or in response to their right of free speech. Having reached this conclusion, we need not address whether the "right of association" under the TCPA applies. *See* TEX. R. APP. P. 47.1.

Because appellants satisfied their initial burden, we move to step two of the burden-shifting analysis: whether Amundson established by clear and specific

–7–

evidence a prima facie case for each essential element of his defamation, defamation per se, business disparagement, and statutory libel claims. TEX. CIV. PRAC. & REM. CODE ANN. § 27.005(c). We consider the pleadings and evidence in the light most favorable to Amundson. *See Dyer v. Medoc Health Servs., LLC*, 573 S.W.3d 418, 424 (Tex. App.—Dallas 2019, pet. denied). We address each cause of action in turn.

***Clear and Specific Evidence of Each Element of Amundson's Causes of Action (Step Two)***

### 1. Defamation, Defamation per se, and Business Disparagement

The elements of a defamation action include (1) publication of a false statement of fact to a third party, (2) that was defamatory concerning the plaintiff, (3) with the requisite degree of fault, and (4) caused damages. *See In re Lipsky*, 460 S.W.3d 579, 594 (Tex. 2015) (orig. proceeding). Defamation per se refers to statements that are so obviously harmful that general damages are presumed. *Id.* at 596. Accordingly, to prove defamation per se, Amundson must only prove the first three elements of defamation, but not the fourth, as he would be entitled to recover general damages without proof of any specific loss. *Id*.

The elements for business disparagement are (1) the defendant published false and disparaging information, (2) with malice, (3) without privilege, (4) that resulted in special damages to the plaintiff. *See Forbes Inc. v. Granada Biosciences, Inc*., 124 S.W.3d 167, 170 (Tex. 2003). A business disparagement claim is similar in many respects to a defamation action. *Id*. The two torts differ in that defamation

–8–

actions chiefly serve to protect the personal reputation of an injured party, while a business disparagement claim protects economic interests. *Id.*

### a. Myers' statements to the Plano Police Department

As applied to Myers' statements to the Plano Police Department, the third element, requisite degree of fault, is dispositive. The status of the person allegedly defamed determines the requisite degree of fault. Because Amundson is a private individual, he need only prove by clear and specific evidence that Classic, through Myers, acted with negligence, meaning Myers knew or should have known that the statements accusing Amundson of reckless driving were false. *See Lipsky*, 460 S.W.3d at 593; *see also Van Der Linden v. Khan*, 535 S.W.3d 179, 200 (Tex. App.— Fort Worth 2017, pet. denied). Courts have described this as the failure to investigate the truth or falsity of a statement, and the failure to act as a reasonably prudent person. *Day v. Fed'n of State Med. Bds. of the U.S., Inc.*, 579 S.W.3d 810, 822 (Tex. App.—San Antonio 2019, pet. denied); *Fawcett v. Rogers*, 492 S.W.3d 18, 27 (Tex. App.—Houston [1st Dist.] 2016, no pet.).

Amundson alleges Myers knew or should have known her statements regarding the alleged reckless driving incident were false because (1) she filed a "sham" report without personal knowledge of the incident; (2) she waited two days to file the report; (2) the report was prefaced with her claiming "bad blood" between Classic Plumbing and Amundson Plumbing; (3) she admitted she filed the police

–9–

report to make a record; and (4) Austin, a convicted felon, lacks credibility. We address each argument in turn.

Myers admitted she did not witness the driving incident. Instead, she received information about what occurred after meetings with Austin, and Dylan Pritchett, an employee who witnessed the incident from a separate Classic company truck, and Christopher Hoover, an employee who told her he had an incident with Amundson a few weeks earlier. Myers believed the allegations because "when there were three people that came at me with a similar story, yes, that conferred that the incident occurred." She explained she filed the report because of the "aggressiveness" and "we felt we had no - - we had to protect our assets." She also explained she made the report as part of her management responsibilities within the company. Myers' explanation of how and from whom she received information about the incident indicates she conducted a reasonable investigation of the allegations. To the extent Amundson contends Myers acted unreasonably because she relied on a convicted felon's statements, we reject his argument. Myers testified Austin's status as a convicted felon did not cause her to question his truthfulness or reliability.

We agree the report discloses past issues with the parties; however, Amundson's mere insinuation that "bad blood" motivated Myers to file a report does not provide clear and specific evidence that she knew or should have known the incident was allegedly false. Rather, the report states Myers "advised" the police department the parties had "some issues between [them] . . . ongoing civil issues

since 2016." The report provides no further details regarding the ongoing civil issues and does not state there was "bad blood" between the parties.

We likewise reject Amundson's argument that Myers acted negligently by waiting two days to file a report. He suggests the "delay" shows she knew the accusations were false. To the contrary, Myers explained she waited to talk with witnesses before contacting police. Amundson fails to explain how waiting to gather information from employees/witnesses is unreasonable.

Finally, Amundson argues Myers acted negligently because she only filed the police report to make a record. Myers stated she filed the report so "*if* we had incidents further down the line, there was at least a record that this had occurred." Filing a police report to show a possible repeated pattern or practice of an individual's conduct is not, under these facts, unreasonable behavior.

We conclude Amundson failed to provide clear and specific evidence Myers knew or should have known the reckless driving incident was false. Because he cannot satisfy the third element of each defamation cause of action, his defamation and defamation per se claims must fail. *See Mohamed v. Ctr. for Sec. Policy*, 554 S.W.3d 767, 777 (Tex. App.—Dallas July 2018, pet. denied); *see also Van Der Linden*, 535 S.W.3d at 198. Amundson's business disparagement claim must also fail because he failed to present evidence of malice, a heightened level of intent more stringent than negligence. *See Forbes Inc.*, 124 S.W.3d at 170 ("Mere negligence is not enough."); *see also Bentley v. Bunton*, 94 S.W.3d 561, 591 (Tex. 2002) (noting

–11–

"failure to investigate facts before speaking as a reasonably prudent person would do is not, standing alone, evidence of a reckless disregard for the truth"). Accordingly, Myers' statements to the Plano Police Department cannot support Amundson's defamation, defamation per se, and business disparagement claims.

### b. Austin's statements to the Board

Amundson alleges Austin's statements to the Board in response to Amundson's complaints are defamatory. However, Amundson is unable to establish by clear and specific evidence that Austin's statements regarding the reckless driving incident are false, thus failing to satisfy the first element of each of his defamation claims.

While Amundson submitted affidavits surrounding his whereabouts on December 10 and 11, his own work logs support that he was away from the Amundson Plumbing office at the time of the incident on December 9.[5] Further, while courts have concluded that when only two people are involved a party "could hardly offer more to refute" a claim other then denying he did it, such is not the case here. *See, e.g., Harrison v. Maroney*, No. 03-19-00626-CV, 2021 WL 3555760, at *6 (Tex. App.—Austin Aug. 12, 2021, no pet.) (mem. op.); *Van Der Linden*, 535 S.W.3d at 2021. Both Austin *and* Pritchett made statements about Amundson's reckless driving on December 9.

---

[5] His handwritten log from December 9, 2020, indicates he arrived at 6:30 am for estimates and a "busy day." He canceled a 9 a.m. appointment. The last entry for that day is "1250 to Mrs. Lehman-EST."

Amundson also presented evidence that the Plano Police Department closed the reckless driving case without any further action; however, the police report contains no finding that Amundson did not drive recklessly. The report instead states the police "advised they need to call the police when incidents are occurring." Thus, to the extent Amundson contends the report is clear and specific evidence of the falsity of Austin's statements, we reject his argument.

Next, Amundson relies heavily on Austin's status as a convicted felon; however, Amundson fails to provide any link between Austin's criminal past and its impact on Austin's statements to the Board expressing his concerns. Amundson essentially asks this Court to conclude that because Austin is a convicted felon, any statements he made regarding Amundson's actions must be considered false and unreliable. We refuse to make such a sweeping conclusion. Accordingly, Amundson did not present clear and specific evidence establishing Austin's statements to the Board regarding the reckless driving incident were false.

Because Amundson did not provide evidence that Austin published a false statement, his defamation, defamation per se, and business disparagement claims cannot survive. The trial court erred by denying Austin's motion to dismiss based on these statements.

### c. Appellees' "derogatory" statements to Amundson's customers

Finally, we consider the statements to Amundson's customers. Amundson asserts Austin made "derogatory" statements to Amundson's customers, vendors,

–13–

and suppliers and attempted to entice customers away with false statements. He claims appellants were "targeting Amundson's repeat customers and commercial clients with false and defamatory statements in order to impact the business and livelihood."

The record does not contain any specific evidence regarding the alleged statements Austin, or anyone associated with Classic, made to any alleged customers. A liberal reading of Amundson's pleadings indicates the "derogatory" statements must relate to the alleged reckless driving incident. However, the pleadings and evidence must establish "the facts of when, where, and what was said[;] the defamatory nature of the statements[;] and how they damaged the plaintiff." *Lipsky*, 460 S.W.3d at 591. This is because in defamation claims, context matters. *Mignogna v. Funimation Prods., LLC*, No. 02-19-00394-CV, 2022 WL 3486234, at *8 (Tex. App.—Fort Worth Aug. 18, 2022, no pet.). A plaintiff must provide enough detail to show the factual basis for his claim. *Id*.

Amundson maintains appellants used derogatory statements to slander Amundson Plumbing to its existing customers and divert business to Classic. Missing from Amundson's assertions are the facts of when, where, and what was said. He has failed to provide the factual context for his claims. *Id*. (emphasizing context matters in defamation claims); *see, e.g.*, *MVS Int'l Corp. v. Int'l Advert. Sols., LLC*, 545 S.W.3d 180, 202 (Tex. App.—El Paso 2017, no pet.) (concluding plaintiff did not meet first element of defamation claim because he did not identify

the group, when the statement was made, or discuss how he knew such statement was made).

Accordingly, to the extent Amundson relies on statements appellants made to unidentified customers to support his causes of action for defamation, defamation per se, and business disparagement, he failed to provide clear and specific evidence of at least one element of his causes of action. Therefore, the trial court erred by denying appellants' motion to dismiss Amundson's causes of action as they relate to appellants' statements to unidentified Amundson customers.

## 2. Statutory Libel

Amundson relies on the same statements Austin made to the Board and Myers made to the Plano Police Department to support his statutory libel claim. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 73.001. Libel is a subset of defamation and means defamation in writing. *Tiegen v. Slice*, No. 05-19-00285-CV, 2020 WL 728426, at *2 (Tex. App.—Dallas Feb. 13, 2020, no pet.) (mem. op.). The elements of statutory libel and common law libel are the same. *Id.* As explained above, dismissal was appropriate on Amundson's defamation claims; therefore, his statutory libel claim cannot survive. *See Humane Soc'y of Dallas v. Dallas Morning News, L.P.*, 180 S.W.3d 921, 923 (Tex. App.—Dallas 2005, no pet.). The trial court erred by denying appellants' motion to dismiss Amundson's statutory libel claim.

Having considered each of appellants' arguments, we conclude the trial court erred by denying their TCPA motion to dismiss in its entirety. Accordingly, we

–15–

sustain appellants' first issue.  Having reached this conclusion, we need not address appellants' second issue in which they challenge the trial court's order granting appellees' limited discovery.  *See* TEX. R. APP. P. 47.1.

**Conclusion**

The trial court erred by denying appellants' TCPA motion to dismiss because appellees failed to carry their burden to establish a prima facie case for each element of their defamation, defamation per se, business disparagement, and statutory libel causes of action.  We reverse the trial court's order and render judgment dismissing these causes of action.   In light of our disposition, we remand to the trial court for a determination of mandatory attorney's fees and for consideration of sanctions, if any.  *See* TEX. CIV. PRAC. & REM. CODE ANN. § 27.009(a)(1), (2).

/Erin A. Nowell// 
ERIN A. NOWELL
JUSTICE

220066f.p05



## Court of Appeals
## Fifth District of Texas at Dallas

## JUDGMENT

MATTHEW D. AUSTIN, CLASSIC PLUMBING, LLC AND JULIA M. MYERS, Appellants

No. 05-22-00066-CV      V.

BILL AMUNDSON AND AMUNDSON PLUMBING, LLC, Appellees

On Appeal from the 101st Judicial District Court, Dallas County, Texas Trial Court Cause No. DC-21-06546. Opinion delivered by Justice Nowell. Justices Schenck and Molberg participating.

In accordance with this Court's opinion of this date, the denial by operation of law of appellants' August 2, 2021 Motion to Dismiss Pursuant to Chapter 27 of the Texas Civil Practice and Remedies Code is **REVERSED** and judgment is **RENDERED** dismissing appellees' defamation, defamation per se, business disparagement, and statutory libel causes of action against appellants.

We **REMAND** to the trial court for the determination of mandatory attorney's fees and for consideration of sanctions, if any. *See* TEX. Civ. PRAC. & REM. CODE ANN. § 27.009(a)(1), (2).

It is **ORDERED** that appellants recover their costs of this appeal from appellees.

Judgment entered this 15th day of November, 2022.